ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| HÉCTOR ROMÁN ORTIZ  Recurrente  v.  DEPARTAMENTO DE CORRECIÓN Y REHABILITACIÓN  Recurrido | **KLRA202400692** | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección y Rehabilitación  Caso Núm.: 1-109892/6-66564  Sobre: Reconsideración del Comité de Clasificación y Tratamiento |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de marzo de 2025.

Comparece ante este foro el Sr. Héctor Román Ortiz (señor Román o "el recurrente") —*in forma pauperis y por derecho propio*— y nos solicita que revisemos una *Resolución* emitida por del Comité de Clasificación y Tratamiento ("Comité" o "parte recurrida") con fecha del 30 de octubre de 2024. Mediante la cual, el Comité ratificó el nivel de custodia del recurrente en mediana.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** el dictamen recurrido.

### I.

El señor Román cumple una sentencia de 198 años de reclusión por la comisión de los delitos de escalamiento agravado, robo agravado, robo, robo domiciliario, violación, tentativa de violación, actos lascivos, sodomía, tentativa de asesinato, uso de disfraz, desacato criminal, Artículos 6, 8 y 32 de la Ley de Armas, empleo de violencia e intimidación a la autoridad

pública, Artículos 4.04, 4.05, 5.05, 5.07, 5.10 y 6.01 de la Ley de Armas, utilización de tarjetas de crédito, restricción a la libertad, tentativa de secuestro, oferta de soborno, agresión agravada, secuestro agravado, Artículo 15 de la Ley Vehicular y desacato criminal.[1] El recurrente cumple el mínimo de su sentencia el 5 de junio de 2101 y el máximo de su sentencia el 13 de agosto de 2200.

El 20 de octubre de 2024, el Comité de Clasificación se reunió para evaluar el nivel de custodia del señor Román.[2] Como resultado, el Comité acordó ratificar el nivel de custodia del recurrente en mediana.

Por ser pertinente para la correcta disposición del recurso ante nos, es necesario señalar que en la *Escala de Reclasificación de Custodia (Casos Sentenciados)*,[3] el señor Román obtuvo una puntuación total de custodia de 4, que correspondería a custodia mínima. Sin embargo, en la evaluación, la técnica de clasificación (sociopenal) utilizó una modificación discrecional para un nivel de custodia más alto, siendo ésta "gravedad del delito". La sociopenal indicó "el MPC cumple por delitos contra la integridad humana y contra la vida humana. Deberá beneficiarse de todos los tratamientos que ofrecen Physician Correctional por la naturaleza del delito."

En la *Resolución*, el Comité realizó 18 determinaciones de hechos y concluyó que conforme al *Plan de Reorganización Núm. 2* del 21 de noviembre de 2011, al amparo del *Manual para la Clasificación de*

---

[1] *Informe para la Evaluación del Plan Institucional*, págs. 2-8 del apéndice en oposición del recurso.
[2] *Resolución*, págs. 9-10 del apéndice en oposición del recurso.
[3] *Escala de Reclasificación de Custodia (Casos Sentenciados)*, págs. 11-13 del apéndice en oposición del recurso.

*Confinados #9151* del 22 de enero de 2020, acordaron ratificar custodia mediana.

En desacuerdo, el 3 de noviembre de 2024, el recurrente presentó una solicitud de reconsideración.[4] En esencia, solicitó que el Comité reconsiderara su decisión, y le concedieran el cambio en el nivel de custodia a mínima. Señaló que, el Comité debió tomar en consideración que había culminado un taller, por lo que, le restarían 2 puntos más.

No obstante, el 15 de noviembre de 2024, el Comité denegó la solicitud de reconsideración.[5] En esta, indicó lo siguiente:

> Al aplicar la Escala de Reclasificación (Casos Sentenciados), puntuación de (4) lo que recomienda un nivel de custodia mínima, cuando obtienes una puntuación de 5 o menos en renglones del 1 al 9. Se le aplica la <u>Modificación Discrecional para un nivel de custodia más alto</u> "Gravedad del delito" lo que implica conforme al *Manual para la Clasificación de Confinados*, que: <u>La puntuación subestima la gravedad del delito</u>. *El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación*. **Según se desprende del expediente el recurrente durante los años 2002, 2001 y 2002 comete delitos de robo domiciliario donde atentaba contra las víctimas de manera repudiable donde no solo ocasionó la muerte de dos mujeres sino también, cometió actos bestiales como violación, actos lascivos y sodomía bajo amenaza de un arma de fuego. No solo despojaba a sus víctimas de sus bienes, sino también de su dignidad de forma despiadada, sembrando el terror en la comunidad en especial en el área metropolitana. De igual forma evade jurisdicción con intención de no responsabilizarse por los delitos cometidos**. Estos hechos bien justifican el uso de la modificación discrecional observada de manera prolongada considerando la totalidad de la sentencia impuesta y el tiempo que le resta por cumplir por los delitos que ostenta. El hecho de estar en un nivel de moderada supervisión en nada

---

[4] *Proceso de Reconsideración sobre Clasificación de Custodia*, págs. 14-15 del apéndice en oposición del recurso.
[5] Véase, pág. 16 del apéndice en oposición del recurso.

interfiere con su proceso de rehabilitación.

Aun inconforme, el 17 de diciembre de 2024, el señor Dávila presentó el recurso de epígrafe. No obstante, aun cuando el recurso no contiene señalamiento de error en específico, el recurrente solicita la revocación de la *Resolución* recurrida. Mediante este, reitera su pedido de que se le reclasifique a un nivel de custodia mínima.

Por su parte, el 10 de febrero de 2025, el Departamento de Corrección y Rehabilitación compareció ante nos por medio de la Oficina del Procurador General, mediante *Escrito en Cumplimiento de Resolución*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II.

La clasificación de los confinados bajo la custodia del Departamento de Corrección se rige por los Reglamentos Núm. 9151[6] y 8523 de 22 de enero de 2020 y 30 de noviembre de 2012[7], respectivamente. El método de clasificación de confinados constituye "el eje central de una administración eficiente y un sistema correccional eficaz". Parte I, Reglamento Núm. 9151, *supra*.

Así, para lograr un sistema de clasificación funcional, el Departamento de Corrección debe ubicar a cada confinado en el programa y en el nivel de custodia que resulte menos restrictivo, para el cual el confinado cualifica. Ello, sin menoscabar la seguridad y las

---

[6] *Manual para la Clasificación de los Confinados.*
[7] *Manual para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Correccionales.*

necesidades, tanto de la sociedad, como de los demás confinados y del personal correccional. *Íd.*

La Sección 1 del Reglamento Núm. 9151, *supra*, establece los distintos niveles de custodia, los cuales define como sigue:

> **Máxima**- Confinados de la población general que requieren un grado alto de control y supervisión. A estos individuos se les puede restringir de determinadas asignaciones de trabajo y de celda, así como de determinadas áreas dentro de la institución, según se estime necesario por razones de seguridad. Se requerirán por lo menos dos oficiales correccionales como escolta para realizar viajes de rutina o de emergencia fuera de la institución. Se utilizarán esposas, cadenas y grilletes en todo momento mientras los confinados de custodia máxima se encuentren fuera del perímetro de seguridad (la verja o el muro). Estos confinados estarán en celdas y no en dormitorios. Esto no limita la participación del confinado en los programas y servicios. Contarán con un período mínimo de dos (2) horas diarias de recreación física al aire libre, según lo permitan las condiciones climáticas.

> **Mediana**- Confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. Se requiere de dos oficiales correccionales como escolta para realizar viajes, ya sean de rutina o de emergencia, fuera de la institución, y se utilizarán esposas con cadenas en todo momento. A discreción de los oficiales de escolta, se podrán utilizar otros implementos de restricción.

> **Mínima**- Confinados de la población general que son elegibles para habitar en viviendas de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión. Estos confinados son elegibles para los programas de trabajo y actividades en la comunidad compatibles con los requisitos normativos. Estos individuos pueden hacer viajes de rutina o de emergencia fuera de la Institución sin escolta, cuando tengan un pase autorizado, y pueden ser escoltados sin implementos de restricción.

**Mínima/Comunidad**– Confinados de la población general que están en custodia mínima, pero que han sido catalogados según las políticas del DCR como elegibles para programas comunitarios. Por lo general, estos son programas residenciales sin perímetro de seguridad alguno.

Para determinar el nivel de custodia asignado a un confinado, se requiere que el Departamento de Corrección y Rehabilitación realice un balance de intereses adecuado. De una parte, se considerará "el interés público de lograr la rehabilitación del confinado, así como el de mantener la seguridad institucional y general del resto de la población penal." *Cruz v. Administración*, 164 DPR 341, 352 (2005). De otra parte, se considerará "el interés particular del confinado de permanecer en determinado nivel de custodia." *Íd*. A su vez, deberán considerarse otros factores para cuya atención se requiere la pericia del Departamento de Corrección y Rehabilitación. *Íd*.

Para actualizar y revisar la evaluación inicial del confinado se utiliza el formulario de *Escala de Reclasificación de Custodia (Casos Sentenciados)* ("Escala de Reclasificación"). La Parte II de la *Escala de Reclasificación* establece los siguientes criterios aplicables para evaluar el nivel de custodia en los casos de confinados sentenciados: (1) gravedad de los cargos / sentencias actuales; (2) historial de delitos graves anteriores; (3) historial de fuga o tentativas de fuga; (4) número de acciones disciplinarias; (5) acción disciplinaria más serias; (6) sentencias anteriores por delitos graves como adulto en los últimos cinco (5) años; (7) participación en programas; y (8) edad actual. Véase, Parte II del Apéndice K del Reglamento Núm. 9151, *supra*.

A cada criterio anteriormente mencionado se le asigna una puntuación en la *Escala de Reclasificación*. La puntuación total obtenida como resultado establece el grado de custodia que debe asignarse objetivamente al confinado evaluado. El nivel de custodia según la Parte III(A) de la *Escala de Reclasificación* es el siguiente: 5 puntos o menos en los renglones 1 al 8 de la Parte II corresponde a una custodia mínima; 5 puntos o menos en los renglones 1 al 8 de la Parte II, pero con una orden de arresto y/o detención por violar libertad bajo palabra o probatoria, corresponde a una custodia mediana; 6 a 10 puntos en los renglones 1 al 8 de la Parte II corresponde a una custodia mediana; 7 puntos o más en los renglones 1 al 3 de la Parte II corresponde a una custodia máxima; y, 11 puntos o más en los renglones 1 al 8 de la Parte II corresponde a una custodia máxima. Véase, Parte III del Apéndice K del Reglamento Núm. 9151, *supra*.

No obstante, la *Escala de Reclasificación* provee al evaluador algunos criterios adicionales —unos no discrecionales y otros discrecionales— para determinar el nivel de custodia del confinado. Es decir, que, aunque la puntuación total de custodia obtenida conforme a los criterios objetivos de la Parte II de la *Escala de Reclasificación* indique que procede conceder una custodia específica, el Comité podrá conceder un nivel de custodia más alto o bajo utilizando los criterios adicionales de la Parte III(D) o III(E).

En lo pertinente al caso de autos, los criterios que permiten modificaciones discrecionales para un nivel de custodia más alto son: (1) gravedad del delito; (2) historial de violencia excesiva; (3) afiliación

prominente con gangas; (4) confinado de difícil manejo; (5) grado de reincidencia; (6) riesgo de fuga; (7) comportamiento sexual agresivo; (8) trastornos mentales o desajustes emocionales; (9) representa amenaza o peligro; (10) desobediencia a las normas o rehusarse al plan de tratamiento; y, (11) reingreso por violación de normas. Véase, Parte III(D) del Apéndice K del Reglamento Núm. 9151, *supra*.

Las modificaciones discrecionales son "un conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación." Secc. 1 del Reglamento Núm. 9151, *supra*. Respecto a las modificaciones discrecionales, la Sección III(D) de las Instrucciones para el Formulario de Reclasificación de Custodia del Reglamento Núm. 9151, *supra*, dispone:

> Toda modificación discrecional debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional.

Asimismo, la Sección III(F) de las referidas instrucciones dispone, en lo referente al nivel de custodia recomendado, lo siguiente:

> Después de revisar la puntuación de la escala y toda la información que pueda justificar una modificación, haga un círculo alrededor del nivel de custodia recomendado. Se debe documentar y explicar cada modificación usando las razones mencionadas anteriormente. Este será igual al Nivel de Custodia indicado por la escala si no se recomienda una modificación. Secc. III(F) del Apéndice K del Reglamento Núm. 9151, *supra*.

Particularmente en lo que respecta a modificaciones discrecionales, la Sección III(F) establece: "Explique cuál de las modificaciones discrecionales para niveles de custodia más altos o más bajos se aplican al confinado e incluya los detalles correspondientes." *Íd*.

En cuanto a la modificación discrecional de "gravedad del delito", ésta es definida como sigue:

> Gravedad del delito: La puntuación subestima la gravedad del delito. El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación.
>
> Los confinados cuyas circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia.
>
> Que el Tribunal haya sentenciado al confinado a cumplir sentencia mediante Reincidencia Agravada. *Íd*.

Dicho de otro modo, de utilizarse la modificación discrecional de "gravedad del delito" para un nivel de custodia más alto, se deberá documentar en la *Escala de Reclasificación* las características del delito —es decir, los hechos particulares— que se están utilizando como base para esa decisión.

Cabe destacar que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir. La reevaluación de custodia recalca la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. A su vez, se señala que es importante que los confinados que cumplan

sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución. Secc. 7, Parte II del Reglamento Núm. 9151, *supra.* Véase, además: *Cruz v. Administración,* supra.

La reclasificación efectiva de un confinado dependerá de una serie de factores que han sido elaborados en los manuales y reglamentos discutidos anteriormente, "los cuales tienen el efecto de limitar la discreción de la agencia al momento de adjudicar controversias relativas a la reclasificación de custodia de confinados." *Cruz v. Administración*, supra, pág. 354.

La determinación de reclasificación de custodia es tomada por un Comité conformado por peritos en el campo, los cuales cuentan con la capacidad, preparación, conocimiento y experiencia para atender las necesidades de los confinados y realizar la evaluación requerida. Por lo tanto, una determinación del referido Comité debe ser sostenida por el tribunal "siempre que no sea arbitraria o caprichosa y esté fundamentada en evidencia sustancial." *Cruz v. Administración*, supra, pág. 355. Es decir, el tribunal deberá confirmarla "siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta…". *Íd*.

### III.

En el caso de autos, el señor Román cuestiona que el Comité ratificara su nivel de custodia a mediana, utilizando en su evaluación la modificación discrecional sobre la gravedad del delito. Añade que es merecedor de ser reclasificado a un nivel de custodia mínima, puesto

que, sostiene que ha mantenido una buena conducta, trabaja en mantenimiento desarrollo de destrezas, completó el Taller de Dibujo y Pintura del Programa de Servicios Educativos, y el curso de la Utilización Residencial y Comercial de Plantas Aromáticas y Medicinales. Por ello, en esencia, alega que el tiempo proyectado a cumplir en confinamiento en comparación con el tiempo ya cumplido es uno razonable y está dentro de los parámetros para poder otorgar un cambio de nivel de custodia.

Por su parte, la Oficina del Procurador General indicó que, la custodia fue ratificada a mediana, debido a que se basó en la modificación sobre "gravedad del delito". Reiteró que, el recurrente cumple una sentencia de casi 199 años por delitos altamente graves y extremos. No obstante, indica que la evaluación de custodia, no solo tomó en consideración los delitos del confinado, sino también su conducta, y participación en programas, entre otros factores. Por ello, subrayó que la decisión del Comité fue correcta y era necesario ratificar la custodia mediana.

Luego de examinar el expediente ante nuestra consideración, concluimos que la determinación emitida por el Comité fue correcta y muy justificada. En ausencia de evidencia que demuestre que la agencia recurrida actuó de manera arbitraria, ilegal o irrazonable, concluimos que actuó correctamente el Comité de Clasificación y Tratamiento al emitir el dictamen recurrido.

**IV.**

Por los fundamentos anteriormente expuestos, **CONFIRMAMOS** la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones